IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| **FREDRIC KENDRICK, PH.D.**<br>2900 Main Line Boulevard, #225<br>Alexandria, VA 22301<br><br>        Plaintiff,<br><br>v.<br><br>**TAYLOR O'BOYLE**<br>C/O Story Sanford<br>1751 Rinehart Road<br>Sanford, FL 32777<br><br>**SERVE UPON:**<br><br>**TAYLOR O/BOYLE**<br>C/O  Story Sanford<br>1751 Rinehart Road<br>Sanford, FL 32777<br><br>        Defendant. | Case No. _____ |

## COMPLAINT

Plaintiff Fredric Kendrick, Ph.D., by and through undersigned counsel, hereby makes the following allegations against Defendant Taylor O'Boyle.

## NATURE OF THE ACTION

**1.** This action is being brought to redress unlawful defamation by Defendant which caused substantial harms to Plaintiff personally and civil conspiracy by Defendant which caused substantial harm to Plaintiff's consulting business.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 as this is a civil action where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States.

3. Plaintiff is a citizen of the Commonwealth of Virginia and Defendant is a citizen of the State of Florida.

4. This Court has personal jurisdiction over Defendant pursuant to the Virginia Long-Arm Statute, Va. Code § 8.01-328.1 (A)(3) (causing tortious injury by an act or omission in this Commonwealth).

5. Venue in this judicial district is proper for Plaintiff's claim pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claim occurred therein.

## PARTIES

6. Plaintiff, Fredric Kendrick, Ph.D., is a citizen of the Commonwealth of Virgina residing at 2900 Main Line Boulevard, #225, Alexandria, VA 22301. He leases his apartment from the TRE HSC Notch, LLC and TRE HSC Notch Coinvestment, LLC ("Landlord") d/b/a Notch 8. The Landlord's managing agent is Greystar.

7. Dr. Kendrick is a professor of communications at Tuskegee University.

8. Dr. Kenrick runs an active consulting business. Recently in 2022 he secured a grant, and visited the country of Bahrain to do journalism training, on behalf of the US State Department. See May12, 2022 letter attached as Exhibit A.

9. Dr, Kendrick is a media and communications expert known for his expertise in mobile videography, journalism, and content creation. He seeks to bridge intellectual and cultural gaps between the theoretical and practical application of journalism and media through education, advocacy, and outreach programs.

10. Dr. Kendrick began working in media in the early 1990's, and has been teaching since 2005, aiming to help students and practitioners alike achieve the best

results in their discipline of mass communications and media studies. He has taught thousands, with many being among the leading voices in American journalism and entertainment today. Some popular names taught by Dr. Kendrick include NBC's Shaquille Brewster, CNN's Bria Stone, Bloomberg's Kamron Leach, Billboard Magazine's Carl Lamarre, New York Times' Maya King, and MTV's Nick Cannon.

11. Defendant Taylor O'Boyle is a citizen of the State of Florida currently working as Community Manager at Story Stanford, 1751 Rinehart Road, Sanford, FL 32777. Her home address is unknown, She previously was employed as Community Manager with Greystar, as which she managed the Notch 8 property at 2900 Main Line Boulevard, Alexandria, VA. (the "Property")

## FACTUAL ALLEGATIONS

12. While Defendant O'Boyle was Community Manager at the Property, Plaintiff had occasion to complain to those in the management office forcefully his views about what he considered to be poor management of the property under Greystar. In particular, he complained about televisions not working, a broken garage door that led to theft of a car's tires, and the change to a "pay to park" model for level one of the garage, and management's failure to remedy an issue concerning bird refuse on his patio. He making these complaints he had personal contact with Defendant in the management office.

13. Defendant and others in the management office came to consider Defendant a trouble-maker because of his vigorous complaints about management.

14. On April 26, 2023, the Landlord's attorney Matthew Moore at Shulman Rogers sent him two Notices: (1) a Barring/Trespass Notice and (2) a Notice of Rules Violation and Possibility of Eviction. The Notices are attached in Exhibit B.

15. Each of the Notices accused Plaintiff of engaging in "rude, inappropriate and aggressive behavior toward [Landlord's staff], including but not necessarily limited to (i) coming into the property management office and yelling and cursing at Landlord's staff; (ii) disparaging members of Landlord's staff to other members of the staff; and (iii) making homophobic, racist and sexist comments."

16. The Barring/Trespass Notice announced that Plaintiff was barred from the Property's rental office, community room and resident services office. The Notice of Rules Violation alleged Plaintiff had violated Paragraph 21 of his Lease and threatened termination of his Lease unless Plaintiff complied with his Lease by "immediately ceasing to behave in a rude, inappropriate or aggressive manner toward the Landlord's staff and/or anyone else at the apartment community."

17. Plaintiff responded to the Notices through counsel and denied the "conclusory allegations" made in the Notices. Plaintiff's response letter is attached as Exhibit C.

18. In response to Plaintiff's denials, Notch 8's attorney responded by letter dated May 15, 2023 (attached as Exhibit D), in which he asserted "please be assured that our client has numerous, well-documented examples of conduct and/or statements made by Dr. Kendrick which support such allegations," and provided the following examples: "Dr. Kendrick has:

- Entered the property management office asking, "Where is my black guy?" to which maintenance responded, 'Mohamed will be back in a few weeks. He is back home visiting family.' Dr. Kendrick responded, 'Well, I don't want any Latinos coming into my home for work orders.' Both team members present and on the maintenance team are Latino.

- During performance of a work order, stated, ' I guess I'm stuck with the Mexicans today.'

- Entered the property management office saying, 'when will my black guy be back,' to which the Community Manager responded, 'let's not refer to him like that, his name is Mohamed.' Dr. Kendrick responded, 'Mohamed?! That's his name? I don't like that name' and proceeded to act out someone blowing themselves up with a back-pack on.

- Entered the property management office and said to a female staff member, 'Do you know how to dance? I'm sure you can move your hips.'

- Entered the property management office, speaking about his experience living in the Middle East, knowing that a staff member present is Lebanese. Dr. Kendrick asserted that 'Arabs treat black people poorly' and then began mocking an Arab accent. He further stated, 'No offense, but Lebanese people are known to be fake Arabs.' He often talks poorly about Arabs, their culture and mocks their accent.

- Entered the property management office, sexualizing other residents, talking about the size of their 'assets.'

- On multiple occasions, shared his hatred for white people to all members of the staff.

- During work orders, made fun of an employee that is Lebanese by mocking her and her accent.

- Entered the property management office and mocked the Community Manager to the team members present, making comments about how the women of the office are 'inept' and 'dumb as rocks.'

- Asked female members of the property management office when they plan on getting pregnant and why they aren't pregnant already.

- Entered the property management office, screaming that he is 'being dismissed' and that the Community Manager 'is dumb as rocks.'

- Entered the property management office, yelling and cursing and demanding to be assisted immedately (sic), insisting that he would not wait regardless of the line of people present. He was cursing about the television in the clubroom not having a remote control."

19.　The allegations in the Notices and the May 15 letter regarding Plaintiff's conduct were based on representations made by Defendant Taylor O'Boyle to Notch 8, Greystar and/or Shulman Rogers. In making these representations she collaborated and acted in concert with others in the management office.

20.　The representations made by Defendant regarding Plaintiff's conduct were defamatory under Virginia law in that they constituted publication of actionable statements with the requisite fault on the part of Defendant. The statements were

actionable in that they were false statements of fact that harmed Plaintiff's reputation in the community.

21. The representations made by Defendant were relied upon by Notch 8, his landlord, to attempt to terminate his lease. *See* Letter Notice attached as Exhibit E. This Notice was eventually withdrawn at lease at least in part because Plaintiff had already accepted a lease renewal offered by Notch 8. However, the attempt by Notch 8 and its attorneys to terminate his lease in reliance on Defendant's representation caused stress and anxiety to Plaintiff as well as his incurring attorneys' fees.

22. The allegations in the Notices and the May 15 letter based on Defendant's representations regarding Plaintiff's conduct hurt Plaintiff in his profession as a university professor and damaged his consulting business.

23. The allegations in both Notices and the May 15 letter based on Defendant's representations regarding Plaintiff's conduct make substantial damage to Plaintiff's reputation apparent.

24. Defendant's representations to Notch 8, Greystar and/or Shulman Rogers were: (1) made with knowledge that they were false; and (2) motivated by personal spite or ill will; and (3) not made in good faith.

25. Plaintiff Fredric Kendric is a private figure.

26. In response to the Notices, Plaintiff retained counsel and through counsel attempted to have the Notices rescinded. When the only relief Notch 8 agreed to was a removal of the bar on Plaintiff from the community center, on August 25, 2023 Plaintiff sued Notch 8 in the Alexandria General District Court, Case No. GV23004809-00 (warrant in debt).

27. In his Warrant in Debt, Plaintiff asserted claims of breach of lease and violation of Va. Code § 55.1-1220, retaliation under Va. Code § 55.1-1258(A) and racial discrimination under Va. Code. § 36-96.3 (A)(2). *See* Bill of Particulars without exhibits, attached as Exhibit F. The Notices and Notch 8 counsel's May 15 letter were attached as exhibits to the Bill of Particulars.

28. On December 7, 2023 a trial was held on Plaintiff's warrant in debt and the court rendered a judgment against Plaintiff and in favor of Notch 8. However, the Notices and counsel's May 15 letter remain in the public record from that proceeding.

29. As a consequence of Defendant's wrongful actions Plaintiff has suffered damages for emotional distress, loss of reputation, humiliation, loss of enjoyment of life, and other pain and suffering.

30. As a consequence of Defendant's wrongful actions Plaintiff has suffered expenses, including attorneys' fees, to defend himself against the defamatory statements in Notch 8 and its attorney's letters and Notch's attempt to terminate his lease.

31. Plaintiff's consulting business has been harmed by the defamatory statements in the Notices and counsel's May 15 letter, which remain in the public record from the warrant in debt proceeding and can be accessed by potential clients engaging in a due diligence background review of Plaintiff. His consulting engagements, such as the 2022 State Department engagement for Journalism and Media training workshops *see* Exhibit A), frequently have to go through a rigorous background check that would certainly be corrupted by the false allegations from Defendant and her associates in Greystar's management office.

## CLAIMS FOR RELIEF

### COUNT I
(Defamation under the Common Law of Virginia)

32. Plaintiff incorporates herein by reference all his allegations stated in Paragraphs 1-31 hereto.

33. Plaintiff has alleged, and will prove at trial, all the elements of defamation under Virginia common law, including: "(1) publication of (2) an actionable statement with (3) the requisite intent." *Tharpe v. Saunders*, 285 Va. 476, 480, 737 S.E. 2d 890, 892 (2013).

34. Defendant's statements were "actionable" in that they were both false and defamatory, "tending so to harm the reputation [of Plaintiff] as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." *Id.* at 481, 737 S.E. 2d at 892. Restatement (Second) of Torts § 559.

35. Defendant had the requisite intent. Defendant acted with actual malice as her statements were (1) made with knowledge that they were false; and (2) motivated by personal spite or ill will; and (3) not made in good faith.

36. Thus, Plaintiff is entitled to both compensatory and punitive damages.in an amount to be determined at trial.

### COUNT II
(Civil Conspiracy under VA Code §§ 18.2-499 and -500)

37. Plaintiff incorporates herein by reference all his allegations stated in Paragraphs 1-36 hereto.

38. Defendant combined, associated, agreed, mutually undertook, or concerted together with other persons in the management office for the purpose of

willfully and maliciously injuring Plaintiff in his consulting business in violation of Va. Code § 18.2-499 (A).

39. Defendant attempted to procure the participation, cooperation, agreement or other assistance of one or more persons to enter into any combination, association, agreement, mutual understanding, or concert prohibited by Va. Code § 18.2-499(A).

40. Plaintiff's consulting business has been damaged by the actions of Defendant in violation of Va. Code § 18.2-499(A).

41. Therefore, pursuant to Va. Code § 18.2-500 (A), Plaintiff is entitled to, and does hereby seek to recover three-fold the damages he sustained and the costs of suit, including a reasonable fee to his legal counsel.

**WHEREFORE,** Plaintiff respectfully requests:

A. Appropriate declaratory and equitable relief;

B. An award of Presumed Damages for Plaintiff's claim of defamation per se;

C. An award of Compensatory Damages, including damages for emotional distress, loss of reputation, humiliation, loss of enjoyment of life, and other pain and suffering on all claims allowed by law in an amount to be determined at trial;

D. An award of reasonable expenses, including attorneys' fees, for his efforts to defend against Notch 8's and its attorney's Notices and letters based on Defendant's defamatory statements made to Notch 8, Greystar and/or Shulman Rogers;

E. An award of Punitive Damages up to the amount included by law for Defendant's extremely wanton and malicious conduct;

F.   An award of Treble Damages and the costs of suit, including reasonable attorneys' fees, pursuant to Va. Code § 18.2-500 (A) for damage to Plaintiff's consulting business; and

G.   Any further relief that this court deems just and proper, and any other relief as allowed by law.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38, Plaintiff demands a trial by jury on all issues triable by right by a jury.

Respectfully submitted this 22nd day of February, 2014,

*/s/ Richard Toikka*
WILT TOIKKA KRAFT, LLP
Richard Toikka, Esquire.
Virginia Bar No. 43666
1629 K Street, NW, Suite 300
Washington, DC 20006
rtoikka@wtk-law.com
202-508-3648 (office)
202-521-9803 (fax)
240-888-8110 (mobile – preferred)

*Counsel for Plaintiff*

KENDRICK v. O'BOYLE
**COMPLAINT**
Page 11 of 11